**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 13 2015

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-33368 |
| | ) | |
| Joseph and David Johnsman | ) | Chapter 12 |
| Limited Partnership, | ) | |
| | ) | Adv. Pro. No. 13-3014 |
| Debtor. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Joseph and David Johnsman | ) | |
| Limited Partnership, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Jim Egbert, dba Egbert OK Livestock, et al., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING
### CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Joseph and David Johnsman Limited Partnership is the debtor in the underlying Chapter 12 case. On February 5, 2013, Plaintiff commenced this adversary proceeding, seeking a declaratory judgment that certain collateral constitute assets of the Chapter 12 bankruptcy estate (Count One) and orders directing Defendant Jim Egbert, dba Egbert OK Livestock ("Egbert") to provide an accounting and turnover as a custodian of certain collateral under 11 U.S.C. § 543(b) (Counts Two and Three). [Doc. # 1]. Plaintiff amended its complaint to add the Chapter 12 Trustee as a party defendant. [Doc. # 21]. After obtaining

leave of court to do so, Plaintiff subsequently filed its second amended complaint on April 24, 2014, alleging three additional counts: avoidance of postpetition transfers to Egbert pursuant to 11 U.S.C. § 549 (Count Four), recovery of the property transferred or its value under 11 U.S.C. § 550 (Count Five), and turnover and accounting of the property transferred to Egbert pursuant to 11 U.S.C. § 542 (Count Six). [Doc. ## 72 & 74]. This proceeding is now before the court on Plaintiff's motion for partial summary judgment on its claim brought under § 549 against Egbert [Doc. # 86], Egbert's opposition and motion for partial summary judgment on Plaintiff's §§ 549 and 550 claims as well as claims brought under § 543 [Doc. # 87], Plaintiff's opposition to Egbert's motion and reply in support of its motion [Doc. # 89], and Egbert's reply [Doc. # 90]. Having considered the parties respective arguments, for the reasons that follow, Plaintiff's motion will be denied, and Egbert's motion will be granted as to Plaintiff's claims brought under § 543 and denied as to Plaintiff's claims brought under §§ 549 and 550.

## FACTUAL BACKGROUND [1]

Unless otherwise indicated, the following facts are not in dispute. On July 23, 2012, Plaintiff filed its petition for relief under Chapter 12 of the Bankruptcy Code. [Case No. 12-33368 ("Main Case")]. At the commencement of Plaintiff's bankruptcy case, certain creditors held an interest in Plaintiff's property. Farm Credit Services of Mid-America, PCA ("Farm Credit Services") filed a motion for relief from the automatic stay, asserting that Plaintiff owed it $229,127.28 plus interest pursuant to certain promissory notes that were secured by a first and best lien on "all livestock, equipment, all spare parts and special tools and all fixtures and crops owned by Debtor. . . . (the "Collateral")" [Main Case, Doc. # 10, ¶¶ 3 & 10]. On August 27, 2012, the court entered an order granting Farm Credit Services' motion for relief from stay to allow it to proceed against the Collateral under non-bankruptcy law. [*Id.,* Doc. # 27]. Neither the order for relief nor any order thereafter provided for abandonment of the Collateral.

On September 4, 2012, Farm Credit Services obtained an Order of Possession from the Mercer County, Ohio, Court of Common Pleas, ordering the Mercer County Sheriff to take possession of Debtor's cattle and seven specific pieces of its equipment. [Doc. # 92, p. 8 & 10-12]. However, instead of proceeding against that Collateral under non-bankruptcy law in the state court, Farm Credit Services

---

[1] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

2

permitted Plaintiff to sell equipment and livestock to Egbert.[2] Pursuant to a Bill of Sale dated September 5, 2012, certain itemized equipment and livestock was sold to Egbert for the sum of $191,086.01. [Pl. Ex. A]. According to Plaintiff, it also sold a 2001 John Deere 8400 tractor to Daniel Johnsman for the sum of $64,800[3] and this, together with the proceeds of the sale to Egbert were used to pay the debt owed to Farm Credit Services. On September 17, 2012, the state court granted Farm Credit Services' motion to withdraw the Order of Possession. [Doc. # 92, p. 8].

Subsequently, Plaintiff was notified by AG Credit, ACA ("AG Credit") that it also was asserting a claim and held a lien in various property sold to Egbert and that it was preparing to take steps to repossess its collateral from Egbert. Pursuant to a second Bill of Sale dated September 29, 2012, additional equipment was sold to Egbert for the sum of $54,000. [Pl. Ex. B]. According to Plaintiff, those proceeds were used to pay AG Credit in full. In addition to the livestock, a total of twenty-six pieces of equipment were sold to Egbert pursuant to the Bills of Sale.

Both of the transactions with Egbert were undertaken on the advice of counsel representing Plaintiff at the time and were consummated without notice or a hearing and without a court order. Both the September 5 and September 9 Bills of Sale purport to "sell and convey unto the said Grantee (Egbert), its successors and assigns" the livestock and equipment itemized in the attached exhibit "[t]o have and to hold the same unto the said Grantee, his successors and assigns, to itself and its own proper use and behoof forever."[4] [Pl. Exs. A & B].

Notwithstanding the Bills of Sale, the parties agree that nine pieces of equipment sold to Egbert remain in Plaintiff's possession. [*See* Pl. Ex. C].[5] Plaintiff valued those pieces of equipment on his bankruptcy Schedule B at over $94,000. [*See* Main Case, Doc. # 1, p. 10-12/49]. While seven pieces of equipment are still in Egbert's possession, he has sold the remaining equipment and livestock for a total sum

---

[2] While Plaintiff offers no evidence that Farm Credit Services "permitted" the sale of its Collateral to Egbert, Egbert does not dispute that Farm Credit Services "allowed Plaintiff to sell the property to Defendant." [Doc. # 87, p. 2].

[3] The court notes that Plaintiff's bankruptcy Schedule B includes a 1996 John Deere 8400 tractor, but does not include a 2001 John Deere 8400 tractor. [*See* Doc. # 1, pp. 10-12].

[4] Plaintiff is only one of several grantors set forth in the Bills of Sale. The other grantors are David A. Johnsman, Joseph L. Johnsman, and Joseph and David Johnsman, Ltd. Although it appears that most of the equipment sold pursuant to the Bills of Sale is included on Plaintiff's bankruptcy Schedule B, the following items of equipment are not: 1983 GMC Dump Truck, 2002 TMR 5512 Mixer, 2009 28% Tank Trailer, and Tub Grinder.

[5] Plaintiff's exhibit C lists the status of property sold to Egbert. The parties agree that the notation "do not have" denotes that the specific item of property remains in Plaintiff's possession. [Doc. ## 86, p. 4 & 87, p.3].

3

of $195,000. [*See* Pl. Ex. C].[6]

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

### II. Plaintiff's Claims Under § 549 and § 550

Plaintiff moves for summary judgment only on its claim for avoidance of postpetition transfers to Egbert brought under § 549(a), which provides:

---

[6] For purposes of its summary judgment motion, Plaintiff does not dispute the veracity of facts set forth in exhibit C. [Doc. # 86, p. 4].

4

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
> > (1) that occurs after the commencement of the case; and
> > (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
> > > (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). Three elements underpin a § 549(a) claim for avoidance of a transfer. First, property of the bankruptcy estate must have been transferred. Second, the transfer must have occurred after commencement of the case. Third, the transfer must not have been otherwise authorized by the court or the Bankruptcy Code. *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir. 1991). Plaintiff has the burden of proving the first and second element, and Egbert has the burden of proving the validity of the transfers, that is, that the transfers were otherwise authorized by the court or the Bankruptcy Code. *See* Fed. R. Bankr. P. 6001; 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 6001.01[2] (16th ed. 2013). To the extent that a transfer is avoided under § 549, Plaintiff, standing in the shoes of a trustee, "may recover, for the benefit of the estate, the property transferred, or, . . . the value of such property, from . . . the initial transferee of such transfer. . . ." 11 U.S.C. §§ 550(a)(1).

There is no dispute that the property at issue was transferred to Egbert after the commencement of the case and without being authorized by the court. Where estate property is sold by a debtor, § 363 governs such sale. Sales in the ordinary course of the debtor's business generally do not require court authorization; however, sales other than in the ordinary course of business do require such authorization. *See* 11 U.S.C. § 363(b)(1) and (c)(1). Egbert does not dispute that the transfers were made outside the ordinary course of business as asserted by Plaintiff and, thus, does not dispute that the transfers were not authorized by the Bankruptcy Code. Egbert also does not dispute, and the court assumes for purposes of the parties' motions, that the property transferred was property of the bankruptcy estate. *But see* n.3 (listing items of equipment sold to Egbert but that do not appear to be included on Plaintiff's bankruptcy Schedule B).

While the essential elements of a § 549 claim may have been satisfied, Egbert argues that he is entitled to judgment on both the § 549 claim and Plaintiff's § 550 claim. According to Egbert, Plaintiff lacks standing to pursue claims under § 549 and §550 since Plaintiff's bankruptcy estate suffered no injury as a result of the transfers.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process, *Whitmore v. Arkansas*, 495 U.S. 149, 155(1990), and is an essential and unchanging part of the case-or-controversy requirement," *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992). The "irreducible constitutional minimum" requirements for standing are: (1) the plaintiff must have suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely that the injury will be redressed by a favorable decision. *Id.* at 560-61. The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.* at 561; *Rosen v. Tennessee Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002).

The injury-in-fact requirement, which is the focus of Egbert's constitutional argument, is "a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *Raines v. Byrd*, 521 U.S. 811, 820, n.3 (1977) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). It requires a showing that the alleged injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Article III limitations on federal jurisdiction apply equally in bankruptcy. *Ill. Inv. Trust No. 92-7163 v. Allied Waste Indus., Inc. (In re Resource Tech. Corp.)*, 624 F.3d 376, 382 (2010) ("Article III's standing requirements apply to proceedings in bankruptcy courts just as they do to proceedings in district courts."); *Abbott v. Arch Wood Protection, Inc. (In re Wood Treaters, LLC)*, 479 B.R. 122, 123, 127-28 (Bankr. M.D. Fla. 2012) (addressing constitutional standing in a § 549 case and finding, "as a jurisdictional matter, the Trustee must establish that the estate suffered an injury that is redressable by a judgment in her favor."); *Dill v. Brad Hall & Assoc., Inc. (In re Indian Capitol Distrib., Inc.)*, Adv. No. 10-1180 S, 2011 WL 4711895, *8-11, 2011 Bankr. LEXIS 3892, *18-35 (Bankr. D.N.M. Oct. 5, 2011) (addressing constitutional standing in a § 549 case and dismissing the case, finding that the plaintiff did not establish that the estate suffered an injury).

The court separately addresses Plaintiff's and Egbert's standing arguments since, as explained above, each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy,* 39 F.3d at 1347; *Markowitz,* 190 F.3d at 463 n.6.

**A. Plaintiff's Motion for Summary Judgment**

Plaintiff argues that the injury-in-fact requirement is satisfied in that the transfers to Egbert resulted in a diminution of the bankruptcy estate. Plaintiff first argues that a diminution has occurred in that Egbert continues to remain in possession of much of the property or the proceeds from his disposition of the property, and the estate is thus deprived of the use of that property or those proceeds. According to Plaintiff, "such a deprivation of its possessory interest in estate property would constitute conversion, and thus would necessarily give rise to an injury." [Doc. # 89, p. 6]. However, "upon a debtor's voluntary transfer of estate

6

property, the property ceases to be property of the estate" unless and until the transfer is avoided. *In re Anderson*, 511 B.R. 481, 496-97 (Bankr. S.D. Ohio 2013); *Buckeye Check Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 492 (B.A.P. 6th Cir. 2008) (holding that where the bank honored Debtor's check postpetition, "there was a transfer of property of the estate, and the funds were no longer estate property"). In this case, Plaintiff voluntarily transferred livestock and farm equipment to Egbert in exchange for approximately $245,000 that was used to extinguish secured debt owed by Plaintiff. After the transfer, the property transferred was no longer property of the bankruptcy estate, and Egbert's continued possession of the property or the proceeds from disposition of the property does not constitute a conversion of Plaintiff's possessory interest in the property, as such interest no longer exists. Moreover, Plaintiff's loss of its possessory interest in the property transferred, without more, does not support of a finding that it was injured as a result of the transfers. Plaintiff has made no showing that the value, if any, of its "possessory interest" before the transfers exceeded the purchase price of the property by Egbert.[7]

Plaintiff next argues that a diminution to the estate exists because it may be assumed that the farm equipment remaining in Egbert's possession is declining in value. Plaintiff's assumption is apparently based upon depreciation of the equipment. However, the court agrees with Egbert that in determining standing to pursue avoidance under § 549, the focus must be on whether an injury resulted from the transfers themselves, not on any subsequent loss of value in the hands of the transferee. *See Lujan,* 504 U.S. at 560 ("there must be a causal connection between the injury and the conduct complained of").

Plaintiff also argues that the value of the property transferred to Egbert was approximately $600,000 but that Egbert paid only approximately $245,000 in consideration of those transfers. If true, the bankruptcy estate was injured so as to provide constitutional standing to bring a § 549 claim in that there was a diminution of the estate as a result of the transfers. However, in support of its $600,000 valuation, Plaintiff directs the court only to "pleadings filed with the Court." [Doc. # 89, p. 7]. Although Plaintiff does not specify which pleading it refers to, the "facts" set forth by Plaintiff in support of its Motion includes Farm Credit Services' valuation of its Collateral found in its motion for relief from stay filed on July 30, 2012. In its motion for relief from stay, Farm Credit Services states that the value of its Collateral is $610,000, "based per farm visit in May of 2012 as to equipment and livestock and the Debtor's Schedules for the remaining collateral." [Doc. # 10, ¶ 9]. Farm Credit Services' valuation, however, is a valuation

---

[7] Although Egbert argues that Plaintiff had no right of possession at the time of the transfers in light of the state court Order of Possession, that order relates to only the livestock and four items of Plaintiff's equipment that were eventually transferred to him. [*Compare* Doc. # 92, p. 12 *with* Pl. Exs. A & B and exhibits attached thereto]. It does not affect Plaintiff's right of possession as to any other equipment.

7

of all of its Collateral and is not limited to the Collateral actually sold to Egbert. [*See id.* at ¶¶ 3 & 9].

For the foregoing reasons, the court finds that Plaintiff has failed to show the absence of a genuine issue of material fact as to whether the transfers to Egbert resulted in a diminution of the bankruptcy estate. Nevertheless, Plaintiff cites *Aalfs v. Wirum (In re Straightline Investments, Inc.)*, 525 F.3d 870 (9th Cir. 2008), and *Marathon Petroleum Co. v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255 (11th Cir. 2010), and argues that implicit in these decisions is that, by impugning the integrity of the court and the bankruptcy process, unauthorized postpetition transfers necessarily give rise to an injury. However, as Plaintiff correctly notes, neither case addresses constitutional standing and the court does not find the injury alleged by Plaintiff to be implicit in those decisions. *See Aalfs*, 525 F.3d at 878-79 (stating that it "declined to expand the diminution of estate doctrine, from its established application in § 547 and § 548 cases, to this § 549 case" and finding in summary fashion that the plaintiff's failure to show such diminution "is not enough to allow a transfer to stand when it is otherwise avoidable under § 549 because it satisfies all of the explicit requirements of an avoidable postpetition transfer"); *Cohen*, 599 F.3d at 1262 (stating that § 549 does not provide a harmless error exception).

The court finds that Plaintiff's asserted injury with respect to impugning the integrity of the court and the bankruptcy process by transferring property of the estate without authority is more accurately described as an injury to the court. Constitutional standing requires Plaintiff to show "a distinct and palpable injury to [itself]." *Warth*, 422 U.S. at 501. As Plaintiff has not met its burden of showing the absence of genuine issues of material fact regarding whether its transfers to Egbert resulted in a distinct and palpable injury to Plaintiff, its motion for summary judgment will be denied.

**B. Egbert's Motion for Summary Judgment on Claims Under § 549 & § 550**

Egbert argues that Plaintiff lacks standing under § 549 because it did not suffer an actual injury as a result of the transfers to him. To the extent Plaintiff lacks standing under § 549, he also lacks standing under § 550, since § 550 permits recovery of property for the benefit of the estate only to the extent that the transfer of the property is avoided.

Egbert argues that Plaintiff suffered no loss as a result of the transfers since, according to Egbert, all of the livestock and equipment that were transferred to him were on their way to auction and Plaintiff's loss "would have been complete." [Doc. # 87, p. 7]. Egbert contends that the transaction with Egbert permitted Plaintiff to retain possession of certain equipment and, "if [Plaintiff's] statement of the transaction is believed," bought Plaintiff time to reacquire its machinery and equipment such that Plaintiff "was demonstrably better off for having entered into the transaction." [*Id.*]. Egbert's argument, however, is

8

flawed in several respects.

First, the evidence Egbert relies upon to show that all of the livestock and equipment transferred to him were on their way to auction is the state court's Order of Possession. However, that order only required the sheriff to take possession of the livestock and seven pieces of equipment, not all of which were sold to Egbert.[8] By contrast, a total of twenty-six pieces of equipment were actually the subject of transfers to Egbert pursuant to the Bills of Sale. Thus, Plaintiff's loss of all of that equipment would not have been "complete" as to all of the equipment transferred if Farm Credit Services had proceeded against the property described in the Order of Possession. Moreover, simply subjecting the equipment to auction would not necessarily result in no proceeds of a sale being received by the bankruptcy estate. The livestock and the equipment had not been abandoned, and proceeds in excess of Farm Credit Services' secured claim and the sale expenses would have been paid to the estate. The court thus concludes that the evidence Egbert relies upon does not show the absence of a genuine issue as to the value of the property transferred to him. The court finds that a genuine issue of material fact remains as to whether the transfers resulted in an injury to Plaintiff.

Egbert also argues that Plaintiff cannot satisfy the third requirement for standing, that is, that it must be likely that the injury will be redressed by a favorable decision. To the extent any injury can be shown, Egbert argues that redressability of such injury is governed by § 550. While § 550 may govern recovery of some of the property transferred, it would not appear to govern redressability with respect to equipment sold to Egbert but that still remains in Plaintiff's possession. Presumably, if the transfer is avoided, Plaintiff has no need for recovery under § 550 as to that equipment.

Egbert's redressability argument is also premised on § 550(e), which provides a "good faith transferee" with a lien on property recovered to secure "the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property. . . ." 11 U.S.C. § 550(e)(1). "Improvement" includes "payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee." 11 U.S.C. § 550(e)(2).

According to Egbert, he has a lien under § 550(e) on the property transferred to him in the amount of the payment of the secured debt of Farm Credit Services and AG Credit. Although § 550(e) applies only to good faith transferees, Egbert does not address this factual predicate to his argument. In any event,

---

[8] A 1979 John Deere 4640 tractor and a 1996 John Deere 8400 tractor are included in the Order of Possession but are not included in the exhibits listing equipment sold that are attached to the Bills of Sale. [*See* Pl. Exs. A & B; Doc. # 92, p. 12]. Also, while the Order of Possession includes a 2010 Hagadorn manure spreader, the Bills of Sale indicate that a 2009, not a 2010, Hagadorn manure spreader was sold. [*Id.*].

9

unless that lien equals or exceeds the value of the property transferred, the fact that he may hold a lien does not require a finding that redressability is unlikely, especially in light of the fact that genuine issues remain regarding the value of the property transferred.

Egbert also asserts equitable estoppel as an affirmative defense. Equitable estoppel is an equitable doctrine invoked to avoid injustice in particular cases, *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 58 (1984), and "functions primarily to thwart a litigant from achieving an advantage by misleading another into action or inaction," Christopher Klein, Lawrence Ponoroff and Sarah Borrey, *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr.L.J. 839, 864 (Fall, 2005). In order to prevail on an equitable estoppel defense, Egbert must establish the following elements: (1) the party to be estopped must have used conduct or language amounting to a misrepresentation of material fact; (2) that party must have been aware of the true facts; (3) that party must have had an intention that the representation be acted on; (4) the party asserting estoppel must have been unaware of the true facts; and (5) the party asserting estoppel must have detrimentally and justifiably relied on the representation. *Thomas v. Miller*, 489 F.3d 293, 302 (6th Cir. 2007). Egbert offers no evidence in support of, and does not otherwise address, any of the foregoing elements.

Because there are a genuine issues of material fact regarding the value of the property transferred and whether the transfers resulted in an injury to Plaintiff, and because Egbert offers no evidence in support of an equitable estoppel defense, his motion for summary judgment on Plaintiff's claims brought under § 549 and 550 will be denied.

### III. Plaintiff's Claims Under § 543

In its second and third causes of action, Plaintiff alleges that Egbert is a custodian within the meaning of 11 U.S.C. § 101(11)(C) and seeks orders pursuant to § 543(b) for an accounting and turnover of equipment by Egbert as a custodian. Egbert argues that he is entitled to summary judgment on both claims because he does not fall within the definition of custodian. The court agrees.

Section 101(11)(C) defines "custodian" as a

> trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11)(C).

Egbert clearly is not a trustee or receiver of Plaintiff's property. Egbert argues that he also is not an agent or assignee under a general assignment for the purpose of administration of such property for the

10

13-03014-maw    Doc 96    FILED 08/13/15    ENTERED 08/13/15 15:23:22    Page 10 of 11

benefit of Plaintiff's creditors. Egbert directs the court to the Bills of Sale as evidence that the two transactions transferring property to him were absolute sales with no restrictions. Both Bills of Sale contain identical language stating that the Grantors, including Plaintiff, "sold and conveyed" the itemized livestock and equipment to the Grantee, Jim Egbert dba Egbert OK Livestock, "[t]o have and to hold the same unto the said Grantee. . . to itself and its own proper use and behoof forever." [Pl. Exs. A & B]. "Behoof" is defined to mean "advantage, profit." *Webster's Third New Int'l Dictionary* 199 (1986). Thus, the Bills of Sale show that the livestock and equipment were transferred to Egbert for his own use and advantage or profit forever. The Bills of Sale include no language indicating that the transfers were for the purpose of administration of the property for the benefit of Plaintiff's creditors. Egbert has thus satisfied his burden of identifying facts in the record showing that he did not take possession of the property transferred to him as a custodian.

Nevertheless, Plaintiff contends that, under an oral contract, Egbert took possession of the property transferred to him for the general benefit of the estate. Specifically, Plaintiff relies on its allegation in the Amended Complaint that it "was of the belief that it could purchase the Equipment back from Defendant Egbert and if no purchase occurred Egbert would proceed with liquidation of only enough Equipment that would pay for the funds expended and interest costs for the same." [Doc. $ 74, ¶ 10]. Plaintiff's reliance, however, on allegations in its amended complaint, without more, is insufficient to defeat Egbert's motion for summary judgment. *See Anderson*, 477 U.S. at 248. As such, Egbert is entitled to summary judgment on Plaintiff's claims brought under § 543(b).

For the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Partial Motion for Summary Judgment [Doc. # 86] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Egbert's Motion for Partial Summary Judgment [Doc. # 87] be, and hereby is, **GRANTED** only as to Plaintiff's claims brought under 11 U.S.C. § 543(b) (Counts 2 and 3) and is otherwise **DENIED**.

###

11

13-03014-maw    Doc 96    FILED 08/13/15    ENTERED 08/13/15 15:23:22    Page 11 of 11